# IN THE COURT OF APPEALS OF IOWA

No. 20-0116
Filed April 15, 2020

**IN THE INTEREST OF A.M. and W.M.,**
**Minor Children,**

**K.M., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Carrie K. Bryner, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Kimberly A. Opatz of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., Greer, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

A mother appeals from the termination of her parental rights to her children, A.M. and W.M.[1]  On appeal, she (1) challenges the statutory grounds authorizing termination, (2) argues termination is not in the children's best interests, and (3) claims the juvenile court erred in declining to apply an exception under Iowa Code section 232.116(3) (2019) to preclude termination.  We affirm.

**I. Scope and Standard of Review**

We review termination proceedings de novo.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  "We give weight to the factual determinations of the juvenile court but we are not bound by them.  Grounds for termination must be proven by clear and convincing evidence.  Our primary concern is the best interests of the child[ren]."  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  First, we determine whether a ground for termination under section 232.116(1) has been established.  *See id.* at 472–73.  If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights."  *Id.* at 473 (citation omitted).  Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."  *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

---

[1] The juvenile court previously terminated W.M.'s father's parental rights.  The court did not terminate A.M.'s father's parental rights.

## II. Discussion

### A. Statutory Grounds

The mother challenges the statutory grounds authorizing termination. The juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(h). Iowa Code section 232.116(1)(h) authorizes termination of a parent's parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother limits her challenge to the fourth element, whether the children could be returned to her care. We find the children could not be returned to her care.

The mother lacks the level of stability necessary to safely care for the children. Her housing is not stable. In the last six months of this case alone, the mother lived in at least five different locations. And we question the stability of her current residence. She purchased a trailer with her former paramour. But her name does not appear on the lot lease, she does not appear on the trailer title, and she has not paid the seller for the entirety of the trailer yet. Moreover, she admitted she has paid someone claiming to be the owner's child, not the confirmed owner of the trailer. Given these facts, we fear the mother may be forced to relocate once again. Her lack of stable housing weighs in favor of termination. *See, e.g.*, *In re*

*C.P.*, No. 18-1536, 2018 WL 6131242, at *3 (Iowa Ct. App. Nov. 21, 2018) ("Maintaining stable housing is one the duties of parenting.").

In addition to our concerns regarding the mother's housing, we also question her mental health and stability. Her mental-health diagnoses include anxiety disorder, adjustment disorder with depressed mood, cannabis-use disorder, and post-traumatic stress disorder. These mental-health issues have contributed to her failure to complete critical steps in the reunification process. Her visits with the children went from semi-supervised to supervised due to concerns about the mother's mental health. *See In re C.N.*, No. 19-1961, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) (recognizing visitations should progress and require less supervision before reunification can occur). And she called a social worker recently and made comments about wanting to die. No more than two months prior to the termination hearing, the mother sought out emergency mental-health services.

The mother also self-medicates with marijuana. She has not completed substance-abuse therapy and has missed several drug tests. However, the mother notes she has physical-health conditions that make it difficult for her produce a urine sample on demand. Nevertheless, she remains un-rehabilitated and conceded at trial, "I feel medically I may depend on it sometimes."

We also question the mother's protective capacity due to her past involvement with abusive paramours. *See In re A.S.*, No. 17-1810, 2018 WL 542646, at *1 (Iowa Ct. App. Jan. 24, 2018) (collecting cases finding children cannot be returned to homes with domestic violence). The mother ended a relationship with an abusive paramour but claims she reinitiated the relationship

because A.M. suggested she missed the paramour. This is concerning. Parents must assess situations and take action to protect their children even when those actions run contrary to the children's requests or desires. And the mother, who is currently pregnant, also reinitiated a relationship with the putative father. We question this action because the putative father previously broke into her home drunk and armed with a gun. Given this history, we question the mother's ability to prioritize her family's safety.

Finally, we question the mother's general ability to care for both children. During visits in the community, the mother would focus on A.M. and lose track of W.M. requiring the case worker to ensure W.M.'s safety. And she failed to attend to W.M.'s basic needs; she would not change W.M.'s diaper. So W.M. would return to his foster family in soiled diapers and develop diaper rash.

For these reasons, we find the first step in our review reveals the State established a ground for termination under section 232.116(1)(h).

**B. Best Interests**

Next, we consider whether termination is in the children's best interests. In considering the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive [children] of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *Id.* at 41.

We conclude termination is in the children's best interests. A.M. remains in the father's care, and the father lives with his parents, who serve as W.M.'s foster parents. So the children are effectively placed together. And W.M.'s foster parents wish to adopt W.M. so the children could grow up together. *See* Iowa Code § 232.116(2)(b) (noting the juvenile court may consider a placement's willingness to permanently integrate the children into the family when making a best-interests determination); *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994) (acknowledging siblings "should be kept together" whenever possible). Further, a three-month extension prior to the termination hearing was unavailing. So we believe the mother would continue to present a safety risk to the children but for termination. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (looking to a parent's "past performance because it may indicate the quality of care the parent is capable of providing in the future" when determining if termination is in the child's best interest). Termination will provide the children with a sense of permanency and stability.

Accordingly, on the second step of our review, we conclude termination is in the children's best interests. *See J.E.*, 723 N.W.2d at 802(Cady, J., specially concurring) (noting the child's safety and need for permanency are the "defining elements" under the best-interest analysis).

**C. Exceptions**

We complete our three-step analysis by considering if section 232.116(3) should be applied to preclude termination. "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *See A.S.*, 906 N.W.2d at 476. Even if the parent proves an exception,

we are not required to apply the exception. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). We exercise our discretion, "based on the unique circumstances of each case and the best interests of the child[ren]," to determine whether the parent-child relationships should be saved. *Id.* (citation omitted).

The mother argues section 232.116(3)(c) should be applied to preclude termination. Section 232.116(3)(c) permits the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship[s]." We do not find the parent-child bonds between the mother and children to be so strong to overcome our safety concerns. *See In re A.F.*, No. 19-1668, 2020 WL 569643, at *2 (Iowa Ct. App. Feb. 5, 2020).

Therefore, on the third step of our review, we conclude no exception in section 232.116(3) applies to preclude termination of the mother's parental rights.

## III. Conclusion

The juvenile court was correct in terminating the mother's parental rights.

**AFFIRMED.**